**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE (NAACP), *et al.*,<br><br>      *Plaintiffs*,<br><br>  vs.<br><br>ELISABETH "BETSY" D. DEVOS, in her official capacity as the United States Secretary of Education, and the UNITED STATES DEPARTMENT OF EDUCATION,<br><br>      *Defendants*. | Case No. 1:20-cv-01996 (DLF) |

### DECLARATION OF DANIEL GOHL IN SUPPORT OF PLAINTIFFS MOTION FOR PRELIMINARY INJUNCTIVE RELIEF, OR IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

1. My name is Daniel Gohl. I am the Chief Academic Officer for Broward County Public Schools ("Broward" or "BCPS"), the public school district in Broward County, Florida. I have held this position for five years. Prior to my current role, I was the Chief Academic Officer for the Houston Independent School District in Houston, Texas. BCPS is the local education agency ("LEA") for Broward County, Florida. BCPS is a plaintiff in this lawsuit against Secretary of Education Elisabeth D. "Betsy" DeVos (the "Secretary") and the United States Department of Education (the "Department") challenging the Department's interim final rule issued July 1, 2020 entitled *CARES Act Programs; Equitable Services to Students and Teachers in Non-Public Schools*, 85 Fed. Reg. 39,479 (the "Rule"), and corresponding federal regulations, *see generally* 34 C.F.R. § 76.665.

2. BCPS's principal address is 600 SE 3rd Avenue, Fort Lauderdale, Florida 33301. BCPS's telephone number is (754) 321-0000.

3. I have compiled the information in the statements set forth below through personal knowledge, consultation with BCPS personnel, and review of relevant documents and databases. I have also familiarized myself with the Rule and its impact on BCPS's schools and students.

4. BCPS has 327 public elementary and secondary schools and a total enrollment of 267,970 students. BCPS is the sixth-largest school district in the country and the second-largest in the State of Florida. The BCPS student population is 39.4% Black, 31.6% Hispanic/Latinx, 22.2% White, and 3.6% Asian. Among BCPS students, 60.8% qualify for free or reduced-price lunch, 11.4% are English Language Leaners, and 13.9% are students with disabilities.

5. BCPS has 199 Title I schools. The total enrollment in the district's Title I schools is 134,290 students.

6. There are 42,606 private-school students who reside in Broward County. Only 6,221 of those students are low-income for the purposes of calculating the set-aside for equitable services pursuant to Title I.

7. BCPS anticipates receiving $61,979,755 from the Coronavirus Aid, Relief, and Economic Security Act's ("CARES Act") Elementary and Secondary Schools Emergency Relief ("ESSER") Fund. BCPS anticipates receiving $5,722,118 from the Governor's Emergency Education Relief ("GEER") Fund under the CARES Act.

8. BCPS intended to use CARES Act funds on the following resources, programs, and staff: Saturday support services for students, online academic support and tutoring programs, and technical support and technological devices for students across the districts, including

devices, mobile hot-spots, and developmentally appropriate touch-screen devices for our younger students.

9. Under the Rule, BCPS must choose one of two options for the calculation of equitable services funding for private-school students. Under Option 1, the district must set aside a share of its CARES Act funding for equitable services proportionate to the total number of private-school students residing in the district rather than the proportion of low-income private-school students. Under Option 2, the district can calculate its equitable services funding based on the proportion of low-income private-school students but then faces onerous restrictions on the use of its CARES Act funding. Specifically, the district may not use that funding in any non-Title I schools and must follow the "supplement, not supplant" rule. BCPS has chosen Option 1, but would be harmed by both options.

10. If BCPS chose Option 1, it would be unable to afford the following resources and programs which it planned to purchase before COVID-related budget cuts: procurement of developmentally appropriate touchpad tablets for students in grades kindergarten through second; supplemental instructional support programs for students in grades K-12; and Saturday support services for students, which includes both supplies as well as overhead and staffing.

11. If BCPS chose Option 2, the district would be unable to afford the following in its non-Title I schools because of the Title I-only restriction: cleaning supplies and personal protective equipment ("PPE").

12. Loss of the above programs, services, and staff will have a significant negative effect on the district and its students while a decision on the merits in this litigation is pending. Students have been out of the traditional classroom for months. Even though teachers and administrators worked hard to make distance learning successful, it is not a perfect substitute for

face-to-face learning, especially for the primary grades.  It would be detrimental to students and learning to put a hold on the above programs while waiting for a decision on the merits.  The district has been planning to provide quality teaching and learning since the beginning of the pandemic.  It is essential that we have the technology software when school begins so that we can get students on the right track early.  Even if this injunction is not granted until the first week of September (at minimum), students will have already been harmed by attending school for approximately two weeks in a digital environment that does not have enough resources to make those students as successful and empowered as possible.

13.     If the use of ESSER funds is delayed, students will be irreparably harmed by not being able to access the resources that could be available to them and to which they are entitled under the language of the CARES Act.  Under Option 1, students across the district will suffer beginning the first day of the school year, because the district will be forced to forgo the above-mentioned programs and options in order to fund increased equitable services to private schools and to ensure their budgets do not run out by the end of the year.  Even if that funding requirement is later removed, and BCPS purchases some of the above-mentioned services for the remainder of the school-year, students will lose days of instruction where they did not receive these services.  Those days cannot be made up, and the harm to those students cannot be mitigated.  Additionally, the harm those students would suffer would be cumulative; their loss of learning will persist throughout the remainder of the school year and into subsequent years of enrollment for public school students.

14.     Under Option 2, the district would not be permitted to spend CARES Act funds in non-Title I schools.  As a result, students will lose valuable learning time that cannot be recaptured.  Delaying support services for high-need disengaged students in our non-Title I

schools would also mean that for months, we would be unable to ensure that our students most at-risk of learning loss are accessing education.  If the rule was revoked and the supplement not supplant requirement was removed midway through the school year, not only would these services be unavailable for the beginning of the school year, but they would be unavailable for approximately 60% of the instructional year prior to the commencement of the State testing window in the first week of May 2021.  There are only 180 days in an instructional year, and each day without access to the resources not only denies students the needed resources but adds to the students' future need to complete *all* of the additional supplemental learning and supports in a shorter timeframe.

15.     There is also an administrative burden on BCPS associated with using a new calculation method for equitable services and then trying to figure out how to provide services to all private-school students.  Under Option 1, the district now is in charge of procurement and oversight of technology being distributed, monitored and maintained at private schools all over the district, with many of whom the district did not already have a prior relationship.  This will include processing orders, long-term inventory monitoring, audit control functions, and additional staff time.  As previously mentioned, the Rule forces the department to provide services to 36,000 more, typically affluent, students than the district would already be responsible for serving—those low-income students in private schools.  The cumulative number of 36,000 students is larger than many school districts in Florida and nationwide, and the cost of providing services to them—and the cost of figuring out how to provide services to them—is enormous.  The administrative burden of procurement and oversight because of this massive sea change imposed on the district is significant.  Once those initial expense are spent, they not reimbursable, even if the Rule is later vacated.

16. The application process itself placed a burden on BCPS because the district was required to work with significantly more private schools than normal to figure out what the needs of those schools were.

17. Using CARES Act funds only for Title I schools will also impose an administrative burden on BCPS. BCPS would have the burden of overseeing the 199 Title I schools to ensure that the funding was spent strictly in a way that only *supplements*, not *supplants*, current expenditures.

18. For BCPS, were it not for the Rule, the district would be able to provide more needed services to low-income students, English Language Leaners, students with disabilities, and homeless students.

I declare under penalty of perjury that the foregoing is true and correct. Executed on August 11, 2020.

_____

DANIEL GOHL