# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE (NAACP), *et al.*, <br><br> *Plaintiffs*, <br><br> vs. <br><br> ELISABETH "BETSY" D. DEVOS, in her official capacity as the United States Secretary of Education, and the UNITED STATES DEPARTMENT OF EDUCATION, <br><br> *Defendants*. | Case No. 1:20-cv-01996 (DLF) |

## DECLARATION OF DR. CHRISTOPHER BLAIR IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTIVE RELIEF OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

1. My name is Christopher Blair. I am the Superintendent of Bullock County Schools ("BCS"), the public school district in Bullock County, Alabama. I have served in this role since December 2017. I have worked in public education for approximately 24 years. I have earned two Master's Degrees, one in English Education and one in School Administration, and a Doctoral Degree in Educational Leadership. I am aware Villi Prempeh and her minor children, W.N. and P.N., are plaintiffs in a lawsuit filed against Secretary of Education Betsy DeVos and the United States Department of Education challenging the Rule issued July 1, 2020 and entitled *CARES Act Programs; Equitable Services to Students and Teachers in Non-Public Schools*, 85 Fed. Reg. 39,479. ("Rule"). W.N. and P.N. attend public schools in BCS.

2. BCS's principal address is 108 Hardaway Avenue, Union Springs, Alabama 36089. BCS's phone number is (334) 513-1416.

3. I have compiled the information in the statements set forth below through personal knowledge, consultation with BCS personnel, and review of relevant documents and databases. I have also familiarized myself with the Rule and its impact on BCS's schools and students.

4. BCS has three public schools and one Career Technical Center and a total enrollment of 1,447 students. The BCS student population is 86.9% African-American, 11.6% Hispanic/Latinx, 1.3% White, 0.1%, Asian, and 0.1% multi-racial. Among BCS students, 2.3% are students with disabilities.

5. BCS is eligible for the U.S. Department of Agriculture's Community Eligibility Provision, which allows the district to provide all district students free breakfast and lunch without collecting individual household applications. As of April 2020, the student poverty rate in the BCS district was approximately 72%.

6. BCS is underfunded by state and local funds given the high number of low-income and high-need students enrolled in BCS. As a result, even before COVID-19, the district was unable to provide programs and services to meet the needs of our students. At this point, the long-term impact of COVID on student outcomes is unknown. As those impacts become more apparent, BCS will need even more funds to accelerate learning and provide students with wrap-around services to address the myriad social and emotional problems that the pandemic is causing.

7. All three of BCS's schools are Title I schools. The Title I elementary school has 605 students, the Title I middle school has 474 students, and the Title I high school has 368 students.

8. There is one private school located within Bullock County, and it has an enrollment of 94 students. Prior to COVID-19, this private school has declined all equitable

services from BCS. However, the private school has informed BCS that it expects the district to provide equitable services for its students from the CARES Act funds.

9. BCS anticipates that it will receive approximately $853,000 from the Coronavirus Aid, Relief, and Economic Security (CARES) Act's Elementary and Secondary Schools Emergency Relief (ESSER) Fund. BCS will be required to spend approximately $40,000 in ESSER funds on equitable services for private school students.

10. BCS anticipates that it will receive approximately $113,000 from the CARES Act's Governor's Emergency Education Relief (GEER) Fund. BCS will be required to spend approximately $6,000 in GEER funds on equitable services for private school students.

11. BCS submitted its application for ESSER funds to the Alabama State Department of Education on July 22, 2020. BCS has not yet submitted its application to receive GEER funds.

12. BCS intends to use CARES Act funds on the following resources, programs, and staff: mobile devices (including maintenance for those devices); wireless internet access devices and internet hotspots; internet access service (including on school buses) and fees; professional development; student instruction; before and after-school tutoring; cleaning and sanitation supplies and services; classified support personnel; and summer learning staff.

13. Under the Rule, BCS must choose one of two options for calculation of equitable services funding. Under Option 1, the district must set aside a share of its CARES Act funding for equitable services proportionate to the total number of private school students residing in the district rather the proportion of low income school students. Under Option 2, the district can calculate its equitable services funding based on the proportion of low-income private school students but then faces onerous restrictions on its use of the remaineder of its CARES Act funding. Specifically the district may not use that funding in any non-Title I schools and must follow the "supplement not supplant" rule.

3

14. Although all schools in the district are Title I schools, BCS is choosing to follow Option 1 for two reasons. First, the "supplement not supplant" restriction under Option 2 would prohibit BCS from purchasing even the most basic items -- like cleaning supplies and computers – that are essential to the district's ability to serve students in a safe environment as effectively as possbile. Second, because the district is eligible under the U.S. Department of Agriculture's Community Eligibility Provision, it does not collect data on the number of district students who qualify for free or reduced price lunch. Therefore, the district is unable to calculate the proportionate percentage for equitable services in School Year 2019-2020 or the comparison of low-income qualifying students who were attending BCS and participating private schools within the county district in March 2020, as Option 1 requires.

15. For a district with a student poverty rate of over 70%, the impact of the Rule means that approximately $50,000 that BCS is entitled to under the CARES Act must now be set-aside to provide services to private school students. The loss of these funds will be devastating to BCS students who are in need of services and other educational essentials.

16. Loss of the funds will undoubtedly have a significant negative effect on the district and its students while the decision in this lawsuit is pending.

17. Understanding the Rule's "options" and restrictions on spending the funds imposes an administrative burden on BCS. It requires the district to spend more time planning how to effectively spend CARES Act funds and then purchasing goods and services that are allowable under the Rule. With fewer funds available to the district, district staff will spend a significant amount of time determining how to make up for the approximate $50,000 that the Rule requires be spent on services for private school students. District staff must also monitor all ongoing and future purchases made with CARES Act funds to ensure compliance with the Rule.

It also requires more time to be spent educating and then collaborating with private school officials in the midst of a pandemic.

18.  If the Rule had not been published, BCS would have continued its needs assement based on current data and spending restrictions. The BCS district desperately needs additional teachers and school nurses, and could have used the $50,000 to hire one of those individuals if the Rule had not been implemented.

I declare under penalty of perjury under that the foregoing is true and correct.  Executed on August 10, 2020.

_____
Dr. Christopher Blair