**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE (NAACP), *et al.*,<br><br>      *Plaintiffs*,<br><br>  vs.<br><br>ELISABETH "BETSY" D. DEVOS, in her official capacity as the United States Secretary of Education, and the UNITED STATES DEPARTMENT OF EDUCATION,<br><br>      *Defendants*. | Case No. 1:20-cv-01996 (DLF) |

**DECLARATION OF VICTOR GOODE IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTIVE RELIEF OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

1.      My name is Victor Goode. I am the Interim National Education Director for the National Association for the Advancement of Colored People (the "NAACP"). In this role, I lead training, resources, and other support for NAACP units on implementation, monitoring, and enforcement of federal education law and ensuring quality public education. I have been with the NAACP since 2004, including in roles in the Office of General Counsel, and I have led the NAACP's Education Department since 2014. I am an attorney licensed to practice in Texas and Ohio. The NAACP is a plaintiff in this lawsuit against Secretary of Education Elisabeth "Betsy" D. DeVos (the "Secretary") and the United States Department of Education (the "Department") challenging the Department's interim final rule issued July 1, 2020 entitled *CARES Act Programs; Equitable Services to Students and Teachers in Non-Public Schools*, 85 Fed. Reg. 39,479 (the "Rule"), and corresponding federal regulations, *see generally* 34 C.F.R. § 76.665.

2. The NAACP's principal address is 4805 Mount Hope Drive, Baltimore, Maryland, 21215. The NAACP telephone number is (410) 580-5777.

3. Founded in 1909, the NAACP's mission is to secure the political, education, social, and economic equality of rights in order to eliminate race-based discrimination and ensure the health and well-being of all persons. Our principal areas of advocacy are education, health equity, criminal justice, civic engagement, climate/environmental justice, and economic opportunity, among other issues. The Education Committee of the NAACP's national board, in concert with education chairs and leaders from across the Association, has focused our education advocacy on ensuring that all disadvantaged students and students of color are on the path to college and/or a successful career through access to great teaching, equitable resources, and challenging curricula. We work to increase public school funding for students who need the most resources; address the literacy crisis; close the "digital divide" in schools and homes resulting from inadequate access to technology; and improve the treatment of Black students in education.

4. The NAACP is a membership-based, civil rights advocacy organization, with over 2,200 units across the country. The NAACP's national membership includes individuals from across the country who would be irreparably harmed by the Department's illegal Interim Final Rule, including parents or grandparents of minor children attending Title I and non-Title I public schools in districts that either (1) stand to lose substantially increased amounts of CARES Act funds to private-school students, or (2) will be forced to accept significant restrictions on their use of CARES funds. Some of these members include:

> a. Teresa Haley and her minor grandchild, T.M., for whom she is the legal guardian, are from Springfield, Illinois. T.M. attends Southeast High School, a Title I school, in School District No. 186, a district that contains both Title I

and non-Title I schools.  Under the Department's unlawful interpretation of the CARES Act contained in the Rule, T.M.'s school will either receive decreased funds or be unable to spend the CARES Act funds for critical services.

b. Kimberly Griffin and her minor child, C.G., are from Ocala, Florida.  C.G. attends Legacy Elementary, a Title I school, in Marion County School District, a district that contains both Title I and non-Title I schools.  Under the Department's unlawful interpretation of the CARES Act contained in the Rule, C.G.'s school will either receive decreased funds or be unable to spend the CARES Act funds for critical services.

c. Eugene Howard and his minor children, M.R. and E.H., are from Houston, Texas.  E.H. attends Codwell Elementary School, a Title I school, in Houston Independent School District, a district that contains both Title I and non-Title I schools.  M.R. attends Rodeo Palms Junior High, a Title I school, in Alvin Independent School District, a district that contains both Title I and non-Title I schools.  Under the Department's unlawful interpretation of the CARES Act contained in the Rule, both M.R. and E.H.'s schools will either receive decreased funds or be unable to spend the CARES Act funds for critical services.

d. Jabari Jones and his minor children, J.J. and J.J., are from Indianapolis, Indiana.  J.J. attends North Central High School, a Title I school, and J.J. attends Eastwood Middle School, a Title I school, both in the Metropolitan School District of Washington Township, a district that contains both Title I and non-Title I schools.  Under the Department's unlawful interpretation of

the CARES Act contained in the Rule, both J.J. and J.J.'s schools will either receive decreased funds or be unable to spend the CARES Act funds for critical services.

5. The NAACP works to advance its education priorities for Black students, many of whom are overrepresented in school districts that are already underfunded.  The NAACP supports our state and local units across the country as they work with their Governors and Superintendents to ensure equitable and adequate school funding and fair access to resources. Sometimes the NAACP turns to the Courts to address school funding and fair access to resources.

6. The Rule limits the public funding available to school districts at a time when they need resources the most, exacerbating other key education issues the NAACP works to address, including the literacy crisis, the digital divide, and how Black students are often perceived, treated, educated, and disciplined.  The timing and substance of this Rule make our work more difficult.

7. The NAACP works to ensure equity in implementation of the federal Every Student Succeeds Act ("ESSA"), Pub. L. 114–95, 20 U.S.C. 1001 *et seq.*  For example, we engage our members with our ESSA toolkit, which serves to equip NAACP units with the knowledge to help constituents access the benefits promised under ESSA to improve schools within their jurisdiction.  This toolkit also provides information on civil rights approaches to addressing education equity challenges, with the aim of improving public schools in every neighborhood through a combination of local, state, and national activism and community engagement.

8. These ESSA tools include supporting the Title I requirement for parental engagement, by working with Title I school Principals to organize Title I parent organizations

4

and/or encouraging NAACP units to establish their own Title I parent subcommittee within their state or local Education Committees.  The robust, meaningful parental engagement envisioned under Title I is made more difficult by the pandemic, and many schools will face financial challenges if school districts do not also receive the funding they are entitled to under the CARES Act or if CARES Act funds have severe spending restrictions.

9. The Rule will require that the toolkits, PowerPoints and trainings we use to teach our members how to advance education equity will need to be revised to address the new challenges imposed by the Rule.

10. During the COVID-19 pandemic, the NAACP has worked with our units to ensure that State Governors and Superintendents of local educational agencies ("LEAs") can address the digital divide during school closings, and that where States and school districts do re-open schools, they provide parents with a high-quality, equally accessible, public, non-charter virtual options.  The Rule diverts resources that districts need to address these concerns and harms the NAACP's ability to work effectively with districts to ensure that all children's educational needs are met.

11. The Rule will necessitate that the NAACP divert significant resources, including staff time, to ensuring the mission of the NAACP is carried out for students who are disproportionately impacted by COVID-19.

12. We will need to also engage, through our units, our members who serve on school boards, who represent school districts as administrators, who teach in school districts, and/or who work in districts in other capacities to navigate the foreseeable impacts of difficult choices presented by the Rule.  This will likely include producing trainings for these members, especially those working in severely under-resourced districts.  These trainings may cover the consequences of each option under the Rule, assessing the impact of the Rule on students in a

district, the requirements of "supplement, not supplant," the need for a new calculation method for equitable services, and the challenge of how to provide equitable services to all private school students.

13. Additional trainings will need to be conducted for members who are families and students disproportionately impacted by COVID-19. We will need to spend more time with State and local units to encourage them to advocate for transparency and engagement by school districts with communities, and Black and other communities of color. We will also need to educate and push districts to educate people in these communities about the consequences of diverted or restricted funds imposed by the Rule, and the impact those diversions or restrictions will have on our members.

14. The NAACP's units and members across the country are facing many issues during the pandemic, including many members serving as front-line, "essential" workers facing risks to their health and safety, other members losing employment due to the economic crisis resulting from the pandemic, and the impact on incarcerated people, including youth in secure State juvenile facilities, across the country who face extreme health risks.

15. The Rule will require the NAACP to spend less time addressing these crises in order to support its units who are navigating the difficult decision imposed on their school districts by the Rule, districts that are struggling with limited resources to ensure students continue to learn, receive school meals, and access technology, health, and mental health supports during the pandemic. This may require assistance from staff from other Program areas (Health, Criminal Justice, Economics), including the Legal Department and outside counsel, to assist the Education Department given the complicated nature of the Rule. But this will divert scarce resources from Legal and/or other areas. Or it may require hiring a consultant or additional staff.

I declare under penalty of perjury under that the foregoing is true and correct. Executed on August 10, 2020.

                                                                 Victor Goode, Esq.