# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE (NAACP), *et al.*,<br><br>*Plaintiffs*,<br><br>vs.<br><br>ELISABETH "BETSY" D. DEVOS, in her official capacity as the United States Secretary of Education, and the UNITED STATES DEPARTMENT OF EDUCATION,<br><br>*Defendants*. | **Case No. 1:20-cv-01996 (DLF)** |

### DECLARATION OF DR. BRIAN MCDONALD IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTIVE RELIEF, OR IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

1. My name is Dr. Brian McDonald. I am the Superintendent of Pasadena Unified School District ("Pasadena Unified"), a local educational agency ("LEA") located in the State of California in a district that includes portions of the City of Pasadena, the City of Sierra Madre, and the unincorporated community of Altadena. I have served as Superintendent of Pasadena Unified since 2014. I have a bachelor's degree in accounting from the University of Houston, a master's degree in education administration from Texas Southern University, and a doctorate in educational leadership from Sam Houston State University. I have extensive experience with federal funding at the school-district level.

2. Pasadena Unified is a plaintiff in this lawsuit against Secretary of Education Elisabeth D. "Betsy" DeVos (the "Secretary") and the United States Department of Education (the "Department") challenging the Department's interim final rule issued July 1, 2020, entitled

1

*CARES Act Programs; Equitable Services to Students and Teachers in Non-Public Schools*, 85 Fed. Reg. 39,479 (the "Rule"), and corresponding federal regulations, *see generally* 34 C.F.R. § 76.665.

3. Pasadena Unified's principal address is 351 South Hudson Avenue, Pasadena, California 91109.  Pasadena Unified's principal telephone number is (626) 396-3600.

4. The information set forth herein is based upon my personal knowledge, consultation with Pasadena Unified personnel, and review of relevant documents and databases. I have also familiarized myself with the Rule and its impact on Pasadena Unified's schools, students, and staff.

5. Pasadena Unified operates 23 public primary and secondary schools serving more than 15,000 children.  Approximately 60% of Pasadena Unified's public-school students meet the federal poverty guidelines for free or reduced-price school lunches.  Likewise, approximately 80% of Pasadena Unified's public-school students are students of color.

6. Of Pasadena Unified's 23 public schools, 18 were designated as Title I schools in the previous fiscal year.

7. Pasadena Unified's district contains more than fifty private schools, with student populations totaling over 9,500.  In the 2019–2020 school year, only 2.1% of students in Title I participating private schools were considered low-income for the purposes of calculating the set-aside for equitable services pursuant to section 1117 of Part A, Title I of the Elementary and Secondary Education Act of 1965 ("ESEA").

8. Pasadena Unified is a "local educational agency" within the meaning of the ESEA, *see* 20 U.S.C. § 7801(30), and the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), *see* § 18007(8), 134 Stat. 569.

9. Pasadena Unified received subgrants under Part A, Title I of the ESEA ("Title I-A") in the previous fiscal year.

10. The California Department of Education ("CDE"), the State educational agency ("SEA") for the State of California, has been allocated $1,647,306,127 from the CARES Act's Elementary and Secondary School Emergency Relief ("ESSER") Fund. CDE must allocate a minimum of $1,482,575,514 (i.e., 90%) of those funds for local education agencies that received Title I-A subgrants during the previous fiscal year, including Pasadena Unified. As a result of those allocations, Pasadena Unified will receive ~$4.6 million in ESSER Funds

11. Pasadena Unified will also receive ~$1.2 million in Governor's Emergency Education Relief ("GEER") funds under the CARES Act.

12. Pasadena Unified is anticipating over $15 million in decreased state and local revenues because of the economic impact of COVID-19.

13. Before the Department's Rule was published, Pasadena Unified intended to use its CARES Act funds to cover the costs associated with its nutritional programs and the spike in children and families needing food; to purchase technology software and hardware for distance learning; to train teachers for distance learning; to make essential physical changes to school facilities to stop the spread of the coronavirus; to pay for supplies, personnel and personal protective equipment ("PPE") necessary for increased cleaning; and to make up for some of the significant losses in state and local revenues for all of the district's ordinary expenses.

14. Since the pandemic began, Pasadena Unified has been planning for the return of students and staff to our campuses, keeping in mind the unique learning needs of students, the impact the virus is having on working families, and the health and safety of all in the school community. The health and safety of our students and staff is at the forefront of all our work.

15. In keeping with the Pasadena Unified Board of Education's authorization and mandates from California Governor Gavin Newsom and state and local public health authorities for schools located in counties with high COVID-19 infection rates, Pasadena Unified will begin the 2020–21 school year on August 17, 2020, in a remote learning environment. The costs to Pasadena Unified of proceeding in this manner are significant. Pasadena Unified will need to pay for mobile hotspots and internet connectivity for disadvantaged students, additional laptops and other hardware, software for distance learning, streaming hardware, technical support specialists and technologies, and remote instruction training for staff.

16. Additionally, Pasadena Unified will need to spend substantial funds to provide meals for the more than 60% of its students who qualify, and their families, at significantly increased prices, resulting in millions more spent on food service than anticipated.

17. Under section 1117 of the ESEA, Pasadena Unified would set aside 2.1% of its total CARES Act funds for equitable services to at-risk private-school students—or approximately $121,800.

18. If Pasadena Unified follows Option 1, or the enrollment-based formula, in the Department's Rule, *see* 34 C.F.R. § 76.665(c)(1)(ii), by apportioning funds for the benefit of private schools based on the total number of students attending private schools, rather than the number of low-income students attending private schools, Pasadena Unified could have to divert as much as 40% of its total CARES Act funds for the benefit of private schools—or approximately $2.3 million.

19. Without these funds, Pasadena Unified will be unduly hampered in its ability to provide quality distance learning at the outset and safe instruction when children and teachers are back on site.

20. If Pasadena Unified instead chooses Option 2, or the poverty-based formula, under the Rule, *see* 34 C.F.R. §§ 76.665(c)(1)(i), (c)(3), because of the "supplement, not supplant" requirement, Pasadena Unified would be forbidden from using CARES Act funds to pay for resources lost in this year's budget cuts. Pasadena Unified faces over $15 million in cuts in state and local revenues—almost 10% of its budget. Pasadena will need to make draconian cuts to staffing, services, and supplies. It must be able to use the CARES Act funds to supplant some of those funds.

21. In choosing Option 2, Pasadena Unified also would not be able to use the CARES Act funds at 5 of its schools sites. Pasadena Unified will be less able to afford the following in its non-Title I schools because of the Rule's Title I-only restriction: cleaning supplies and personal protective equipment; mobile hot-spots for internet connectivity, software for online learning, and food for students and families. Because there are significant numbers of disadvantaged students even in Pasadena Unified's non-Title I schools, those students and their families will all suffer under Option 2.

22. Under Option I, if Pasadena Unified's access to the full measure of CARES Act funds is delayed, the harm will be done. Monies for hiring, training, software and hardware purchases, and technology support will not have been spent to support distance learning. Nor will additional staffing decisions be made and supplies be purchased for onsite learning. In meaningful ways, assistance delayed is assistance denied.

23. Under Option 2, Pasadena Unified will make choices about what it can spend the money on, and what it cannot, that will not be undone midway through the year. For example, delaying technological support services for high-need, disengaged students in our non-Title I schools because of the Rule would be lost instructional efforts for our most at-risk students.

24. Any delay in full distribution of CARES Act funds will also negatively affect Pasadena Unified's ability to continuously provide meals for students and their families who qualify for free and reduced-price meals.

25. Choosing between the options in the Rule also imposes an administrative burden on Pasadena Unified at a time when the district is making every effort to reopen safely. PUSD is forced to choose between following the CARES Act and the Rule, putting it in an untenable situation. Moreover, choosing between Option 1 and Option 2 requires analysis of the harms of each option and determining the least negative alternative. All of this when PUSD should be focusing 100% of its resources on serving students in this unprecedented time.

I declare under penalty of perjury that the foregoing is true and correct. Executed on August 10, 2020.

DR. BRIAN McDONALD